RIVER LIGHT V, L.P.
and TORY BURCH LLC,

        Plaintiffs,

        v.

ZHANGYALI, et al.,

        Defendants.

No. 15 CV 5918

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

Defendant I Love You To The Moom And Back operates an online store and sold earrings bearing a counterfeit Tory Burch trademark. The owners of that trademark, plaintiffs River Light V, L.P. and Tory Burch LLC, brought claims under the Lanham Act and the Illinois Uniform Deceptive Trade Practices Act. Plaintiffs now move for summary judgment and seek statutory damages of $150,000. For the following reasons, summary judgment is granted in favor of plaintiffs, and statutory damages in the amount of $100,000 will be awarded.

## I.    Legal Standards

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014); Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking

summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A court must "construe all facts and reasonable inferences in the light most favorable to the non-moving party." *Apex Digital, Inc. v. Sears, Roebuck, & Co.*, 735 F.3d 962, 965 (7th Cir. 2013).

## II.    Facts

Plaintiffs River Light V, L.P. and Tory Burch LLC hold a valid and incontestable trademark in the shape of two capital T's, registered with the United States Patent and Trademark Office under the number 3,029,795. [52] ¶ 1.[1] Defendant I Love U To The Moom And Back advertised, offered for sale, and sold earrings featuring a counterfeit Tory Burch trademark, without plaintiffs' authorization, through an online Aliexpress.com store. [52] ¶¶ 2–4. It listed the earrings for $1.80, and described them as "Hot fashion follow out big classic double T stud earrings the branded styled fashion rose gold button earrings for women." [52] ¶ 2. Defendant advertised and offered to ship the earrings to potential customers in Illinois and elsewhere in the United States. [52] ¶ 4.

---

[1] Bracketed numbers refer to entries on the district court docket. The facts are taken from plaintiffs' LR 56.1 statement. Because defendant did not follow the court's local rules by submitting a paragraph-by-paragraph response to plaintiffs' LR 56.1 statement, *see* LR 56.1(b)(3)(a)–(b), plaintiffs' facts are undisputed. Defendant also decided not to file a statement of additional facts, which is authorized under LR 56.1(b)(3)(c). Instead, defendant filed two expert reports that are labeled "declarations," *see* [62-1] and [62-3], with over 10,000 pages of attachments. These expert reports do not meet the requirements of LR 56.1, and "a district court is entitled to expect strict compliance with Rule 56.1." *Ammons v. Aramark Unif. Services, Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). Thus, any statements of facts that may be contained therein will not be considered. Defendant also filed with its response brief the declaration of Zhenggui Wang, [62-4], who purports to be defendant's president, but neither party mentions that declaration anywhere in the briefing. Wang's declaration is therefore excluded, as well.

## III. Analysis

### A. Expert Reports

In its response to this motion, defendant refers to and attaches the declarations of Wenquing Li and Michal Malkiewicz—two expert reports that opine on plaintiffs' actual damages and defendant's willfulness in infringing upon plaintiffs' trademarks. *See* [62-1], [62-3]. Plaintiffs request that the expert reports be stricken, because defendant never disclosed the identities of, or its intent to use, any expert witnesses. Under Rule 37(c), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c). Exclusion is "automatic and mandatory," unless the sanctioned party can show that nondisclosure was either justified or harmless. *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003) (quoting *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir.1998)).

Defendant concedes that it failed to make any initial disclosures or disclosures of expert testimony, and that the Li and Malkiewicz declarations constitute expert opinions. Its only excuse is that it did not have an opportunity to provide the necessary disclosures. Defendant claims that it did not decide to commission expert reports until after December 16, 2015, when the briefing schedule for this motion was set and discovery was stayed, and that the expert reports were not ready until six days before its response brief was due. This excuse

is not sufficient justification. Defendant both requested and received the reports before the filing deadline for its response brief, and it could have moved to lift the stay or amend the briefing schedule under Federal Rule of Civil Procedure 56(d). What it should not have done was use a stay of discovery as an opportunity to attach an expert report to its response brief without warning.

Defendant also claims that its nondisclosure was harmless. The following factors should be considered in determining whether nondisclosure was harmless:

> (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date.

*Tribble v. Evangelides*, 670 F.3d 753, 760 (7th Cir. 2012). Defendant concedes that plaintiffs may have been surprised by its experts' existence, but argues that they should not be surprised by the content of the expert reports, because they are consistent with and support "what the defendant [has] been claiming throughout this case." [74] at 4. Defendant makes no mention at all of the prejudice arising from plaintiffs' inability to adequately respond to the expert declarations. "Without proper disclosures, a party may miss its opportunity to disqualify the expert, retain rebuttal experts, or hold depositions for an expert not required to provide a report." *Tribble*, 670 F.3d at 759–60. Plaintiffs had no such opportunity, and defendant has not offered one. Allowing defendant to rely on expert reports that were disclosed for the first time in a response to plaintiffs' summary judgment motion would be prejudicial. Despite defendant's arguments to the contrary, it had the opportunity to make expert disclosures (or seek permission in advance) but did not, and this

indicates a willful decision to not comply with the rules. The declarations of Li and Malkiewicz are therefore excluded.[2]

## B.    Liability

Plaintiffs seek summary judgment on their federal claims of trademark infringement and counterfeiting under 15 U.S.C. § 1114 (count I) and false designation of origin under 15 U.S.C. § 1125(a) (count II), and their Illinois claims, based on the same conduct, under the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1 *et seq.* (count IV). Defendant does not dispute liability and concedes that it owes plaintiffs statutory damages under 15 U.S.C. § 1117(c). The only issue in dispute is the amount of those damages. Thus, summary judgment is granted with respect to counts I, II, and IV.[3]

## C.    Statutory Damages

Plaintiffs seek an award of statutory damages in the amount of $150,000. Under § 1117(c)(1), a plaintiff may seek statutory damages between $1,000 and $200,000 "per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court orders just." 15 U.S.C. § 1117(c)(1). The statute increases the upper limit of the statutory award to $2,000,000 per mark per type of goods or services "if the court finds that the use of the counterfeit mark was willful." *Id.* § 1117(c)(2). The statute is analogous to the provision for statutory damages for copyright infringement under 17 U.S.C. § 504(c). *See Chi-Boy Music v. Charlie Club,*

---

[2] Plaintiffs also stated concerns over the relevance of the reports or the qualifications of the experts, but those concerns need not be addressed.

[3] Count III of the amended complaint, [21], does not pertain to defendant. That cause of action was alleged against other defendants in this case who are not subject to this motion.

*Inc.*, 930 F.3d 1224, 1229 (7th Cir. 1991). In *Chi-Boy*, the Seventh Circuit said that courts enjoy wide discretion in determining statutory damage figures and may consider factors such as "the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent to future copyright infringement." *Id.* (quoting *F.E.L. Publications v. Catholic Bishop of Chi.*, 754 F.2d 216, 219 (7th Cir. 1985)). In addition, in the case of willful infringement, "the statutory damages award may be designed to penalize the infringer and to deter future violations." *Id.* at 1230.

Defendant requests that the lowest possible damages award be given, and its primary argument is simple: "It made an unintentional mistake and it is sorry." [62] at 8. In other words, defendant argues that its infringement was not willful, and as a result, the damages award should not be designed to penalize defendant or deter future infringement. Infringement was willful if the infringer knew that its conduct constituted infringement or if it acted in reckless disregard of the owner's rights. *See Wildlife Exp. Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 511–12 (7th Cir. 1994); *see also Louis Vuitton S.A. v. Lee*, 875 F.2d 584, 590 (7th Cir. 1989) ("Willful blindness is knowledge enough."). Knowledge may be inferred from the infringer's conduct. *Wildlife*, 18 F.3d at 511. Plaintiffs argue that the infringement was willful, because defendant was aware of the possibility that it was selling infringing products but conducted no due diligence of its own. Defendant admits this, but says that it relied on the Chinese government and the entities responsible for the online marketplace that hosts defendant's store, Alibaba and AliExpress, to weed out

counterfeiters and prevent infringement. And it states, without any supporting evidence, that it purchased the infringing products from another AliExpress store, and that it assumed that store's products were not infringing.[4] Defendant claims that this reflects its naivety, but not a reckless indifference to plaintiffs' rights.

Defendant's argument is unpersuasive. Even if defendant had provided evidence to support its claims that Alibaba and AliExpress actively patrolled the online marketplace for infringing activity, it admits that Alibaba's measures consist only of conducting audits on randomly selected merchants and removing the listings of infringing products. It provides no reason to believe that its listings were ever audited, or that this practice obviates the need for individual merchants to monitor their own listings. Defendant does not describe the efforts undertaken by AliExpress or the Chinese government, but it says the Chinese government imposes fines on counterfeiters. Defendant's argument actually supports plaintiffs' position. Performing no due diligence of its own on its product listings and risking a fine by the Chinese government is not just naïve, it shows a reckless indifference to the trademark owner's rights.

Moreover, plaintiffs point out that defendant's wording of the product description, written in English, seems designed to ensure that the product can be easily found by a search engine without calling attention to the brand name—it includes the words "double T" and "branded" but not "Tory Burch." Plaintiffs say

---

[4] Defendant's expert declarations are excluded, but it is worth noting that one of them attaches purchase records of the infringing products and screenshots from the supplier's website, all of which suggest that defendant bought the products from 1688.com, which does not appear to be an AliExpress website. *See* [62-14].

this is consistent with the actions of an intentional infringer, who would try to maximize sales of infringing products while minimizing the risk of the infringement being discovered. Defendant claims, without support in the record, that it merely copied the English-language description from its supplier and, not knowing English, did not have a clear understanding of what it said or meant, even after looking up a translation.[5] Plaintiffs also argue that the Tory Burch trademark is so popular and recognizable that defendant must have known that its products were infringing, while defendant says, again without support, that it did not recognize the trademark. Defendant's unsupported arguments are unpersuasive, and even taking all reasonable inferences in defendant's favor, it is clear that defendant was, at the very least, willfully blind to the counterfeit nature of the earrings. Thus, its infringement was willful, which calls for a higher damages award to both penalize defendant and deter future infringing activities.

Defendant's remaining arguments relate to its calculation of actual damages incurred. Defendant claims that plaintiffs' requested award of $150,000 is excessive in relation to the actual damages as calculated by defendant's experts, and that the award would constitute a windfall. Defendant's expert reports are excluded, so its determination of actual damages will not be considered. Plaintiffs do not provide a competing assessment of its actual damages, and having elected to seek statutory

---

[5] The only possible support for defendant's explanation is a statement in Wang's declaration, [62-4] ¶ 16, but defendant does not cite to that declaration. Moreover, defendant's explanation conflicts with an attachment to Li's excluded expert declaration, [62-14]. According to Li's declaration, the attachment contains screenshots of the supplier's website and purchase records of the infringing earrings. [62-1] at 15 n.53. None of these documents contain English-language product descriptions.

damages under § 1117(c), they do not need to. It is true that there is no evidence in the record to suggest that defendant is a large-scale counterfeiter or that plaintiffs suffered substantial harm. Nevertheless, in light of the undisputed facts supporting a finding of willfulness, the requested relief is not so high as to be considered a windfall.

Plaintiffs emphasize the willfulness of the infringement, and the fact that defendant had the ability to reach a vast customer base over the internet. These factors do militate in favor of a high award to compensate plaintiff, penalize defendant, and deter future infringement. Defendant advertises and sells its products worldwide through its online store; it does not review its products for possible infringement, though it understands that such a possibility exists; and the product description of the infringing earrings that it did sell was worded to ensure maximum exposure and minimal risk of getting caught. The proliferation of lower-quality, counterfeit goods damages a brand's value and goodwill, and a significant award is required to deter defendant and others from engaging in similar conduct. The requested award of $150,000 is also much lower than the maximum award of $2,000,000 that is authorized under § 1117(c)(2) for instances of willful infringement. However, defendant's willful infringement is mitigated to some extent by the fact that it hired counsel and appeared in this action, rather than defaulting. And despite defendant's global reach, there is no evidence to suggest that plaintiffs suffered significant damages as a result of defendant's conduct. Of all the factors to consider, the need to punish and deter willful infringement is the most important

under the circumstances of this particular defendant's conduct, and I conclude that $100,000 is a sufficient award of statutory damages.

**D.    Permanent Injunction**

In addition to statutory damages, plaintiffs requests that defendant be permanently enjoined from advertising, offering for sale, and selling products that bear a counterfeit Tory Burch trademark or otherwise violate plaintiffs' rights in the mark. Defendant does not explicitly refer to this request, but insists repeatedly that it will never engage in the sale of Tory Burch products again. Plaintiffs have established that infringement occurred, and the harm to its brand from the sales of counterfeit goods is irreparable—the confusion caused by knock-off products in the stream of commerce damages the value of the brand and cannot be compensated by money alone. There is no harm to the defendant to being enjoined from violating the law, and the public interest is served by eliminating potential consumer confusion. Plaintiffs request that the permanent injunction order third-party domain name registrars and online marketplaces to disable any account linked to defendant, linked to any e-mail addresses used by defendant, or linked to the defendant's internet store. They also request that defendant be enjoined from owning or operating any domain name or online marketplace account that could be used to sell infringing products in the future. These requests are overbroad in that they disproportionately harm defendant's ability to conduct legitimate business. The request for injunctive relief is otherwise granted.

### E. Attorney's Fees and Costs

Finally, plaintiffs seek recovery of its attorney's fees and costs. Attorney's fees are recoverable under § 1117(a) and § 1117(b) in certain circumstances, including when the infringement was willful. 15 U.S.C. §§ 1117(a)–(b); *see also BASF Corp. v. Old World Trading Co.*, 41 F.3d 1081, 1099 (7th Cir. 1994). Defendant correctly notes that those provisions relate to awards of actual damages rather than statutory damages, but attorney's fees are available when plaintiffs opt to receive statutory damages under § 1117(c), as well. *See Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 111 (2d Cir. 2012). Accordingly, reasonable attorney's fees shall be awarded to plaintiffs. Costs are available to plaintiffs, as the prevailing party, under Federal Rule of Civil Procedure 54(d)(1).

## IV. Conclusion

Plaintiffs' motion for summary judgment, [50], is granted. Enter permanent injunction prohibiting defendant from violating plaintiffs' rights in the Tory Burch mark. Statutory damages in the amount of $100,000, attorney's fees, and costs shall be awarded. Plaintiffs' motion for attorney's fees and bill of costs is due by 9/12/16, defendant's response is due by 9/26/16, and plaintiffs' reply is due by 10/11/16.

ENTER:

Manish S. Shah
United States District Judge

Date: 8/22/16